Rocco C. Galotti & others *vs.* United States Trust Company
(and a companion case[1]).

Suffolk.   January 7, 1957. — March 1, 1957.

Present: Wilkins, C.J., Spalding, Williams, Whittemore, & Cutter, JJ.

*Deceit.   Intent.   Practice, Civil,* New trial.

An action of deceit by an applicant to a bank for a letter of credit to be used in a purchase of goods could not be maintained on the basis of a statement by a representative of the bank that certain specifications respecting the goods would be inserted in the letter of credit as re-

---

[1] The companion case is by the defendant in the first case against the plaintiffs in the first case.

quested by the applicant where, although it appeared that such speci-
fications were not inserted, there was no evidence that at the time the
representative made the statement he intended not to insert them.
[501]

No abuse of discretion nor error appeared in an order, made after a ver-
dict for the defendant in an action, for a new trial on the ground that
the verdict was against the weight of the evidence. [502-503]

· CONTRACT OR TORT. Writ in the Superior Court dated
March 12, 1953.

CONTRACT. Writ in the Superior Court dated June 2, 1953.

The actions were tried before *Broadhurst,* J. A second
trial of the action by the United States Trust Company was
before *Beaudreau,* J., without jury.

*James L. Kenney, (Joseph P. Collins* with him,) for
Galotti and others.

*John N. O'Donohue,* for United States Trust Company.

CUTTER, J. Galotti and others (hereinafter called the
partners) were partners in a fruit company and made a
contract (which was not offered in evidence) to purchase
bananas from a Costa Rican company called Agencias
Americanas (hereinafter called Agencias). Two of the
partners called at the office of United States Trust Company
(hereinafter called the trust company) to obtain a letter of
credit required in the transaction. They there executed in
triplicate an application for the letter of credit addressed
to The Chase National Bank (hereinafter called the Chase
Bank).

There was conflicting evidence whether, when the applica-
tion was signed, it was fully made out. One of the partners
testified that there was no typewriting on the blank when
it was signed because no stenographer was available during
the lunch hour to fill it out. In both actions here involved,
over objection made in behalf of the trust company, this
partner was permitted to testify (a) that he had requested
that there be inserted in the application a statement in
considerable detail of the specifications with respect to the
bananas and certain terms of the sale, and (b) that a repre-
sentative of the trust company had said that the partners

"could rest assured" that, if they signed the application in blank, all that had been requested "would be put in."

The partners "had a fairly good knowledge of the printed provisions which were in the application when they signed it" and the partner who testified stated that he had participated in over one hundred "transactions involving letters of credit and importation of foreign merchandise." The jury (in the deceit action mentioned below brought by the partners against the trust company and in the original trial of a cross action brought by the trust company against the partners) found, in answer to two special questions submitted by the trial judge, that the application was not complete when signed and that an employee of the trust company told one of the partners "that it would be filled out with the complete description of the bananas" which that partner had testified he furnished to the trust company for insertion.

When the application for the letter of credit was forwarded by the trust company (with its own guaranty) to the Chase Bank the application referred briefly to "fresh bananas @ $1.65 per bunch of 55 lb. per average bunch" and did not contain the somewhat more complete, detailed description which the partners contended they had requested. The application also (a) contained (in small but legible capital letters), under the blank in which the brief description just quoted had been inserted, the printed instruction "(Please mention commodity only, omitting details as to grade, quality, price, etc.)"; (b) indicated under the heading "Documents required" that there would be needed three commercial invoices and consular invoices and an "Inspection certificate issued by Max Planas or T. Laundre" together with a "Full set on Board Bills of Lading to order of The Chase . . . Bank"; and (c) included a provision that "The users of the Credit shall be deemed our [the partners'] agents and we [the partners] assume all risks of their acts or omissions" and further that neither Chase Bank nor its "correspondents shall be responsible . . . for the . . . character, quality . . . or delivery of the property purporting to be represented by documents." There were also included

an indemnity agreement and an exculpatory provision that any action taken by the Chase Bank or any correspondent of that bank "under or in connection with the Credit or the relative drafts, documents or property, if taken in good faith, shall be binding on us [the partners] and shall not put you [the Chase Bank] or your correspondent under any resulting liability to us." It was stated that the bananas were to be shipped to Mobile, Alabama.

The Chase Bank then issued its irrevocable letter of credit in conformity with the application. This letter of credit, like the application, contained only a brief description of the bananas, and not the more lengthy description which the partners claimed they had requested.

Bananas were delivered to Mobile, but there was testimony that they did not conform to the specifications. One of the partners requested the trust company and later the Chase Bank to stop payment on the letter of credit. The partners also brought a bill in equity (not one of the cases now before us) in the Superior Court in this Commonwealth against the trust company to restrain payment on the letter of credit. This bill alleged no fraud, breach of contract or misconduct by either the trust company or the Chase Bank.

An assignee of Agencias, the shipper of the bananas, also brought an action in the New York courts against the Chase Bank based upon the letter of credit and a draft drawn under it. The partners were allowed to intervene in the New York action and filed a cross action against the Chase Bank, but in this action also there was no allegation that the trust company or the Chase Bank "had committed any breach of duty toward" the partners "in connection with the application or the letter of credit." In these proceedings summary judgment was recovered by the assignee of Agencias in the sum of $16,495.37. The Chase Bank paid this judgment and also, in connection with the New York action, incurred legal fees of $1,002.30. The cause of action of the Chase Bank against the partners was then assigned to the trust company, which had theretofore collected

$15,000 from the partners which was available for application against the trust company's claim as assignee, leaving a balance of $2,497.67 claimed by the trust company.

The first of the present actions is an action by the partners in tort for deceit alleging that the trust company promised to insert, and fraudulently represented that it would insert, in the letter of credit the full specifications of the bananas and certain related terms of sale; that the partners relied on these representations, which the trust company knew were untrue; that the trust company intended to deceive, and did deceive, the partners by failing to insert the specifications in the letter of credit; and that, as a result of the failure, money was paid on the letter of credit. The trust company filed a cross action to recover the balance ($2,497.67) of its claim as assignee of the Chase Bank.

In the action for deceit brought by the partners, the trial judge, under leave reserved, entered a verdict for the trust company. The jury had found for the partners in the sum of $15,000. The trial judge did not act upon the trust company's motion for a new trial in this case, but in the cross action, in which the jury found for the partners, the trial judge ordered a new trial on the ground that the verdict was against the weight of the evidence. A consolidated bill of exceptions presents for our review exceptions saved by the partners to these rulings by the trial judge.

A new trial of the action by the trust company against the partners took place before a judge of the Superior Court, sitting without a jury. He found for the trust company, having denied certain requests for rulings, hereinafter mentioned, presented by the partners. A separate bill of exceptions, relating solely to the second trial of the cross action, presents the question of the correctness of the trial judge's denial of these requests.

1. In the action of deceit against the trust company the gist of the action was the alleged promise or representation of the trust company that the full specifications of the transaction would be inserted in the letter of credit. There is no evidence of any misrepresentation of any other fact by

the trust company and the numerous cases, cited in behalf of the partners, relating to misrepresentations of external facts, whether innocent or fraudulent, are here irrelevant. Ordinarily a promise alone does not furnish basis for an action of deceit. See *Morrison* v. *Tremont Trust Co.* 252 Mass. 383, 389; *Ernest F. Carlson Co.* v. *Fred T. Ley & Co. Inc.* 269 Mass. 272, 277; *Moran* v. *Levin,* 318 Mass. 770, 773; *Fanger* v. *Leeder,* 327 Mass. 501, 505–506; Harper and James, Law of Torts, § 7.10.

Here, however, the partners attempt to bring the case within the principle of *Dubois* v. *Atlantic Corp.* 322 Mass. 512, 520, where it was held that if "the defendant [in that case] misrepresented its intention as to filling in the blanks" in a bill of sale there involved "it was a misrepresentation of a material fact, which could be made the foundation of an action for deceit." In the present case, we think that the partners have produced no evidence tending to show that the representative of the trust company (assuming that he promised that the blank application would be filled in as the partners requested) had no intention of doing so. Indeed, there is no testimony, either direct or in the surrounding circumstances, as to his intention. An intention by a banker to disobey a customer's explicit instructions cannot reasonably be inferred from anything in this record. There is no evidence suggesting any motive for action in behalf of the trust company contrary to whatever instructions may in fact have been given. An essential element in the case, an intention not to carry out the promise, existing when the promise was made, has thus not been shown. "The intent with which a person acts is usually a question of fact . . . to be determined from his declarations, conduct and motive, and all the attending circumstances" (*Casey* v. *Gallagher,* 326 Mass. 746, 749) but there must be evidence from which that intent may be found. Intention not to perform a promise, existing when the promise is made, cannot be shown merely by nonperformance of the promise. Restatement: Torts, § 530, comment c. Prosser, Torts (2d ed.) § 90 at page 565. See analogy of *Fanger* v. *Leeder,*

327 Mass. 501, 505–506. See also *Flaherty* v. *Schettino*, 136 Conn. 222, 226–227; *Fidurski* v. *Hammill*, 328 Pa. 1, 3. That intention must be shown by other evidence. See *Knudsen* v. *Domestic Utilities Manuf. Co.* 264 Fed. 470, 473 (where the court felt that there was "much more than proof of a failure to perform"). On the somewhat complicated facts and conflicting testimony of the *Dubois* case, there was potential benefit to that defendant (from the action alleged to have been taken in filling in the instruments there signed in blank) which might perhaps have justified an inference that an intention existed from the start to fill in the blanks in a manner contrary to the agreed arrangement. Even as to that, however, the observations of the court at pages 520 and 522 show that the matter was not there free from doubt. We think the *Dubois* case is distinguishable from the present situation. Compare also *Schleifer* v. *Worcester North Savings Institution*, 306 Mass. 226, 227–228.

In view of our decision on the issue of misrepresentation, it is not necessary to consider whether the partners have shown such actual (as opposed to nominal) damage resulting from the alleged misrepresentation[1] as would warrant recovery in an action of deceit. *Dubois* v. *Atlantic Corp.* 322 Mass. 512, 520–521, and cases cited. *Kabatchnick* v. *Hanover-Elm Building Corp.* 328 Mass. 341, 347. *Cardullo* v. *Landau*, 329 Mass. 5, 7–8. See Harper and James, Law of Torts, § 7.15.

A case in deceit has not been proved. Accordingly, the exception to entering a verdict for the defendant under leave reserved must be overruled.

2. On this record we cannot say that there was error on the part of the trial judge in granting a new trial after the first trial of the action brought by the trust company against

---

[1] It is also unnecessary and inappropriate (see *Moss* v. *Old Colony Trust Co.* 246 Mass. 139, 151, and general discussion at pages 149–156) to consider (a) issues relating to letters of credit, such as those raised in *Maurice O'Meara Co.* v. *National Park Bank*, 239 N. Y. 386, *Continental National Bank* v. *National City Bank*, 69 Fed. (2d) 312, 315–317 (C. C. A. 9), certiorari denied 293 U. S. 557, and *Tocco* v. *Bank of Italy*, 249 Mass. 267, 271–272, or (b) the effect of the exculpatory provisions set out in the application for the letter of credit.

the partners. This the trial judge did on the ground that the verdict for the partners was against the weight of the evidence. The partners' exception to the allowance of the motion for a new trial has not been directly argued in their brief and no respects in which there was abuse of discretion by the trial judge have been suggested. The matter of a new trial is one within the trial judge's sound discretion and his action will not be set aside unless there has been abuse of discretion, which can seldom be found on review and has not been shown in the present case. See *Perry* v. *Manufacturers National Bank*, 315 Mass. 653, 656–657; *Hartmann* v. *Boston Herald-Traveler Corp*. 323 Mass. 56, 59–61.

3. The exceptions to the denial of the partners' six requests for rulings made in the second trial of the cross action by the trust company against the partners have not been specifically argued in the brief submitted by the partners. The exceptions are mentioned in the partners' brief only by a reference to the requests in the statement of facts. The brief is wholly devoted to a discussion of the alleged misrepresentation. Under Rule 13 of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 698, this "court need not pass upon questions or issues not argued in the briefs." The exceptions to the denial of the requests can properly be treated as waived. *Jefferson Union Co.* v. *American Radiator & Standard Sanitary Corp*. 329 Mass. 692, 694. *Campbell* v. *Shea*, 332 Mass. 422, 424. *Davis* v. *Vermont Transit Co*. 334 Mass. 248, 250–251. However, we have examined these exceptions and find no merit in them.

4. In connection with each of the bills of exceptions, the entry must be

*Exceptions overruled.*