Stewart S. GILLESPIE and
Beverly GILLESPIE, Plaintiffs
vs.
Nicholas A. PAPALE, WESTBORO
SPEEDWAY, INC., MOTOR SPORT
PROMOTIONS, INC., and Richard
ROBIDOUX, Defendants

No. 80-1897-S

United States District Court
Commonwealth of Massachusetts

April 21, 1982

4. I have termed the issues as dispositive only in the context of the present pleadings. I recognize there are other questions having to do with the completion of the performance of the contract that remain unresolved, but, as I see it, those questions were not presented to the Court.

**Saymour Fox, Esq.**, counsel for plaintiff.
**Raymond J. Kenney, Esq.**, counsel for defendant.
**Francis X. Gribbons, Esq.**, counsel for defendant.
**Lawrence E. Desilets**, counsel for defendant.
**Kendall Burford, Esq.**, counsel for defendant.

### MEMORANDUM AND ORDER

**Skinner, D.J.** Plaintiffs, husband and wife, bring this suit to recover for damages sustained when the midget racing car Mr. Gillespie was driving crashed during warm-up laps at Westboro Speedway. Defendants Papale[1] and Robidoux were the alleged joint or individual owners of the speedway. They allegedly leased the premises to defendants Westboro Speedway, Inc. ("WSI") and Motor Sport Promotions, Inc. ("MSPI") for management and promotion of automobile racing at the track.[2] Jurisdiction is based on diversity of citizenship,

---

1. Mr. Papale died on April 24, 1979. Plaintiffs have amended their complaint to substitute the administratrix of his estate, Anita Papale, as a defendant.

2. Plaintiffs have also filed claims against Northeastern Midget Association, Inc. and United Chevrolet, Inc. The motions addressed in this opinion, however, do not involve those defendants.

plaintiffs are residents of New York while defendants are residents of Massachusetts, and an amount in controversy greater than $10,000. The parties agree that the law of Massachusetts applies.

Defendants have moved for summary judgment and plaintiffs have moved to amend their complaint. For the reasons which follow, defendants' motions are allowed in part and denied in part and plaintiffs' motion is allowed.

On September 9, 1978, Mr. Gillespie and a friend went to Westboro Speedway to race the friend's midget racing car. In order to gain access to the track, Mr. Gillespie signed a form purporting to release certain parties from any liability for injuries he sustained while at the track. Once inside, they unloaded the race car and Mr. Gillespie drove it around the track for several warm-up laps.

Westboro Speedway is an oval track with wooden guardrails on the corners. Vertical wooden posts extended from the tops of the guardrails. During one of his laps, Mr. Gillespie's car spun out on a curve, flipped over, and came to rest upside down upon one of the vertical posts. As a result of that accident, Mr. Gillespie was rendered a permanent quadriplegic.

Plaintiffs instituted suit on September 9, 1978. The relevant parts of their complaint seek to recover damages for Mr. Gillespie's injuries and Mrs. Gillespie's loss of consortium allegedly caused by defendant's negligence in designing and maintaining the track. Plaintiffs have now moved to amend their complaint to also allege that Mr. Gillespie's injuries were caused by the gross negligence of defendants.

1. **Plaintiffs' motion to amend and defendants Robidoux, WSI, and MSPI's motion for summary judgment.**

Defendants Robidoux, WSI, and MSPI have moved for summary judgment on the grounds that the release signed by Mr. Gillespie bars any action against them by either plaintiff.

In **Lee v. Allied Sports Associates, Inc.,** 349 Mass. 544, 550, 209 N.E.2d 329 (1965), the Supreme Judicial Court of Massachusetts considered the effect of such a release. There, plaintiff was struck on the shoulder by a wheel that had come off a car during a race at Westboro Speedway. In order to gain admittance to the pit area, plaintiff had signed a release which stated that he:

> releases and discharges the track owners, the Promoter, the Atlantic Auto Racing Ass'n, Inc., it's [sic] officers and successors, agents and employees from all liabilities that may be accrued from personal injuries that may be received from said entrant...

**Id.** at 547.

The Supreme Judicial Court held that the release was an effective bar to plaintiff's suit for personal injuries allegedly caused by defendant's negligence. It began by noting that a person can "contract for exemption from liability for his own negligence". **Id.** at 550, **quoting, Clarke v. Ames,** 267 Mass. 44, 47, 165 N.E. 696 (1929). The fact that the plaintiff had not read the release did not affect its validity in the absence of "fraud or duress". **Id.** at 550-551. While normally a question of fact, the Court held that in that case the absence of fraud or duress could be noted as a matter of law. There was no evidence that the printing on the release was concealed from plaintiff, or that he was denied the opportunity to read the release, or that any representations were made to him about its contents. **Id.** On this evidence, the Court concluded that: "the paper which [the plaintiff] signed as a matter of law effectively released the defendant from liability for ordinary negligence". **Id.** at 551.

The instant case presents a virtually identical factual situation. Mr. Gillespie was required to sign a release in order to gain entrance to the track area. The release stated that:

> the undersigned for himself, [and] next of kin forever release,...said _____ and _____ and also all agents, officers,

assistants, employees, servants and successors of said _____ _____ and all other persons, firms or corporations insured by liability policies of the American Universal Insurance Company ...from any and all...claims... which the undersigned may have ...or which...his...next of kin...may...have against said releasees, which arise out of injury or damage to his person... resulting from...the use of...any ...property or facility provided, operated or controlled by the... parties above mentioned as being released...regardless of how such injury...may arise, and regardless of who is at fault or whose negligence caused such... injury,...even if the loss is caused by the neglect or fault of...any of the parties...being released.

The release was located on a clip board at the entrance to the pit area. It clearly stated, in large red letters at top and bottom, as well as in smaller red letters in the space where Mr. Gillespie signed, that it was a release. While he did not read the release, there is no indication that its contents were concealed from him, or that he was prevented from reading it, or that any representations were made to him about its contents.

Plaintiffs, however, seek to distinguish the instant case from **Lee** on several grounds. First, they contend that the release is ineffective because it failed to specify that defendants were to be released. They argue that since defendants' names were never inserted into the blanks on the release form, a valid contract releasing defendants from liability was never made.

In order to be valid, "all the essential terms of a contract must be sufficiently definite so that the nature and extent of the obligations of the parties can be ascertained". **Simons v. American Dry Ginger Ale Co., Inc.**, 335 Mass. 521, 523, 140 N.E.2d 649 (1957). The meaning of any particular term, however, is to be determined by reference to the surrounding circumstances. **Id.**

In this case, while the blanks were not filled in and defendants were not specifically named in the release, it did state that all parties "insured by liability policies of the American Universal Insurance Company" were covered. At the time Mr. Gillespie signed the release, defendants Robidoux, WSI, and MSPI were the named insured on such a policy covering Westboro Speedway. As a result, they were identifiable as parties to the release and a valid contract was entered into.

Plaintiffs' second contention is that defendants have actively concealed the identity of the parties covered by the release and therefore it is invalid. They argue that the failure to specifically name the defendants in the release and the difficulty they have had in identifying the actual owner of the speedway constitutes the active concealment which invalidates the release.

The argument that the release is invalid because the defendants are not specifically named therein has been addressed. Plaintiffs' difficulty in determining the true owner of the speedway does not render the release invalid either. The parties covered by the release are determined by reference to policies issued by certain insurance companies. Since defendants Robidoux, WSI, and MSPI are the named insureds on a policy with one of the relevant companies, any difficulty in determining the ownership of the track is irrelevant to the question of their coverage under the release.[3]

Third, plaintiffs contend that, even if the release bars Mr. Gillespie's suit for ordinary negligence, it does not bar a suit for gross negligence. Accordingly, they have moved to amend their complaint to allege that Mr. Gillespie's injuries were caused by defendants' gross negligence in designing and maintaining the track.

---

3. **But, see,** discussion of defendant Papale's motion for summary judgment, **infra.**

453

In **Lee**, the Court expressly stated that the release barred plaintiffs' suit for "ordinary" negligence. **Lee v. Allied Sports Associates, Inc.**, 349 Mass. at 551. The Court did not address the validity of the release against claims of gross negligence, nor has any court acting under Massachusetts law since **Lee** done so.

Cases from other jurisdictions and the general treatises, however, provide substantial support for the rule that while a release such as the one in this case is effective to bar a suit for ordinary negligence, it does not bar suits for gross negligence. For example, in **Barker v. Colorado Region Sports Car Club of America, Inc.**, Colo. App., 532 P.2d 372 (1974), the Court stated that:

> We conclude that Colorado follows the general rule that, in the absence of a duty to the public, exculpatory agreements are valid when fairly made and may be enforced for injury caused by simple negligence. Such agreements, however, must be strictly construed...and in no event may a person be relieved of liability for willful and wanton negligence.

**Barker**, 532 P.2d at 377, **see also,** Prosser, Torts § 68 (4th Ed.) at 444 ("In general...such agreements are not construed to cover the more extreme forms of negligence which are described as wilful, wanton, reckless or gross..."), 6A Corbin, Contracts § 1472 at 596-597 ("such an exemption [from liability] is always invalid if it applies to harm wilfully inflicted or caused by gross or wanton negligence."), Restatement (Second) of Contracts § 195 ("A term exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable"), **Broderson v. Rainier National Park Co.**, 187 Wash. 399, 60 P.2d 234 (1936), **overruled on other grounds,** 484 P.2d 405 (1971).

Massachusetts continues to recognize the concept of gross negligence in certain cases. **See, Markarian v. Simonian**, 373 Mass. 669, 369 N.E.2d 718, 721 (1977) (gratuitous repairs), **Bagley v. Burkholder**, 337 Mass. 246, 149 N.E.2d 143 (1958) ("[W]hen A enters upon a gratuitous undertaking for the benefit of B, the duty of care which A owes B is only the duty to refrain from gross negligence.") It is rarely mentioned in cases involving duties to business invitees, as Mr. Gillespie was here, presumably because Massachusetts imposes a higher duty, one of due care, in those situations. **See, Jaillet v. Godfried Home Bakeries, Inc.**, 354 Mass. 267, 236 N.E.2d 924 (1968).

Given the express limitation of the holding in **Lee** to "ordinary" negligence, the fact that Massachusetts continues to recognize the concept of gross negligence, and the rule applied in other jurisdictions, I conclude that under Massachusetts law the release signed by Mr. Gillespie is not effective to bar his suit for gross negligence.[4]

The release does not bar Mrs. Gillespie's suit for loss of consortium. Massachusetts law provides that "either spouse has a claim for loss of consortium shown to arise from personal injury of the other spouse caused by the negligence of a third person." **Diaz v. Eli Lilly and Co.**, 364 Mass. 153, 302 N.E.2d 555, 564 (1973). While the loss of consortium claim is premised on defendants' having negligently injured the other spouse, it only seeks to redress damage to "the right to society and sexual relations" with that spouse and is a separate cause of action from that for personal injuries. **Id.** at 560-561. As a result, Mrs. Gillespie's claim for loss of consortium accrues to her alone and was not barred when Mr. Gillespie waived his claim for personal injuries caused by defendant's ordinary negligence. **See, for example, Barker v. Colorado Region - Sports Car Club of America**, 532 P.2d at 378 ("Nor has [the

---

4. I have considered certification of this question to the Massachusetts Supreme Judicial Court, but I do not think it would be appropriate, if at all, until after the facts have been more fully developed.

release signed by Mr. Barker] any effect whatsoever on Mrs. Barker's claim for loss of consortium. It does not relieve defendants of liability to Mrs. Barker, even for simple negligence").

In sum, the release signed by Mr. Gillespie is effective to bar his action for personal injuries caused by the ordinary negligence of defendants Robidoux, WSI, and MSPI, but it is not effective to bar his action for gross negligence, or Mrs. Gillespie's action for loss of consortium. Accordingly, plaintiffs' motion to amend is ALLOWED, and defendants Robidoux, MSI, and MSPI's motion for summary judgment is ALLOWED as to Count I and DENIED as to all other counts.

### 2. Defendant Papale's motion for summary judgment.

Defendant Papale has moved for summary judgment on two grounds. The first is that plaintiffs' claims against the estate of Nicholas Papale are also barred by Mr. Gillespie's release.

To the extent the motion seeks to dismiss plaintiffs' claims for gross negligence and loss of consortium, it is denied for the reasons previously stated. To the extent the motion seeks to bar Mr. Gillespie's suit for ordinary negligence, it is inappropriate because there are genuine issues of material fact left to be resolved. Whether the release applies to defendant Papale depends upon whether Nicholas Papale was insured under the speedway policy issued by American Universal. Whether he was so insured is unresolved. While he was not specifically named in the policy, the policy did specifically cover "Richard Robidoux (landowner)". Considerable controversy exists over who actually was the "landowner" during this period. If Papale was the landowner, he might be covered under the policy and thus protected by the release. Until the identity of the true owner is determined, however, it cannot be said as a matter of law that Papale was or was not covered by the release.

Defendant Papale's second ground for summary judgment is that plaintiffs' suit was untimely filed. Nicholas Papale died in April, 1979. Anita Papale was appointed executor of his estate on June 20, 1979. Plaintiffs filed the instant suit in August, 1980, naming Nicholas Papale as a defendant. The complaint was amended on July 16, 1981, to substitute Anita Papale, in her capacity as executor, for Nicholas Papale. Service was made upon her on September 9, 1981. She now argues that by waiting until July, 1981, to file a claim against her, plaintiffs have failed to comply with the statue governing suits against executors and their claim is barred.

Suits against executors are governed by M.G.L.c. 197. Plaintiffs have clearly not complied with section 9 of that chapter which requires that suits by creditors of the deceased be filed within four or nine months of the executor's posting of his bond.

Section 9A, however, provides for a longer filing period. It states that:

> Notwithstanding the provisions of section nine, an action for personal injuries..., if commenced more than nine months from the time of the giving of bond..., may be brought against said executor..., provided that such action is commenced within three years next after the cause of action accrues, and provided further that any judgment recovered in any action so brought may be satisfied only from the proceeds of a policy of insurance or bond, if any, and not from the general assets of the estate.

M.G.L.c. 197, § 9A. Plaintiffs have complied with the first requirement of section 9A. Their suit against the Executor was brought within three years after their cause of action accrued: Mr. Gillespie was injured on September 9, 1978, and the complaint was amended to include Anita Papale as a defendant on July 16, 1981.[5]

---

5. Because the complaint was amended within the three-year period, I do not need to consider the application of Fed.R.Civ.P. 15(c) (relation back of amendments) to this case.

No evidence has been introduced, nor has discovery been completed, on the issue of whether there is an insurance policy or bond available for satisfaction of any judgment. Without such evidence, it cannot be said as a matter of law that plaintiffs' action was not timely filed under section 9A. As a result, the issue is premature for summary judgment.

Accordingly, defendant Papale's motion for summary judgment is DENIED.

**Walter Jay Skinner**
**United States District Judge**