Brady, J.
This case arises out of an alarm service agreement entered into by the parties. Plaintiff, Bouvier Brothers, Inc. (“Bouvier Brothers”), has initiated suit against defendant, Baker Protective Services d/b/a Wells Fargo Alarm Services (‘Wells Fargo”), seeking to recover for properly damage it suffered when thieves disabled the alarm system serviced by defendant and burglarized plaintiffs jewelry store. Plaintiff asserts that defendant’s conduct — namely, failing to properly monitor the alarm system — caused it to incur damages. Plaintiffs complaint seeks recovery based on the following theories: breach of contract (Count I), misrepresentation (Count II), negligence (Count III), gross negligence (Count IV) and unfair and deceptive trade practices (CountV). Defendant has moved for summary judgment pursuant to Mass.R.Civ.P. 56 asserting that the contract’s exculpatory clause bars plaintiffs claims as a matter of law. Plaintiff, on the other hand, argues that the exculpatory clause does not bar its claims for misrepresentation or gross negligence. Moreover, plaintiff contends that defendant fraudulently induced it to enter into the contract and therefore asserts that the contract is void as a matter of law. Plaintiff has also moved for summary judgment on its misrepresentation and G.L.c. 93A claims. For the reasons that follow, defendant’s motion for summary judgment is granted in part and denied in part and plaintiffs motion for summary judgment is denied.
FACTS
The following are the undisputed facts as taken from the parties’ pleadings, affidavits and depositions. Plaintiff owns jewelry stores located in Somerville and Everett. Gilbert Bouvier and his son Jeffrey Bouvier are the principals of the plaintiff corporation. On or about June 18, 1991, defendant’s representative, George Hopping (“Hopping”), visited plaintiffs Somer-ville store to discuss upgrading its alarm system. Hopping discussed the pulse net alarm system with Gilbert Bouvier, the manager of the Somerville store. At this time, Hopping explained to Gilbert Bouvier that if either the telephone lines were cut or there was a problem with the telephone lines the central monitoring station would be notified. Furthermore, Hopping told Gilbert Bouvier that he would be contacted in the event there was a problem with the communication system. Subsequently, Hopping installed the pulse net system and defendant and plaintiff entered into a “Central Station Protective Signaling Service Renewal” contract. This contract obligated defendant to maintain an alarm system in plaintiffs jewelry store. This contract provided in large bold type that:
D. IT IS UNDERSTOOD AND AGREED BY SUBSCRIBER THAT WELLS FARGO ALARM IS NOTAN INSURER; THAT THE SUMS PAYABLE HEREUNDER TO WELLS FARGO ALARM BY SUBSCRIBER ARE BASED UPON THE VALUE OF SERVICES OFFERED AND THE SCOPE OF LIABILITY UNDERTAKEN AND SUCH SUMS ARE NOT RELATED TO THE VALUE OF PROPERTY BELONGING TO THE SUBSCRIBER ORTO OTHERS LOCATED ON SUBSCRIBER’S PREMISES. SUBSCRIBER FURTHER AGREES AND PROMISES THAT, IF IT DESIRES INSURANCE, SUBSCRIBER’S INSURANCE WILL BE OBTAINED FROM AN INSURANCE COMPANY IN SUCH AMOUNT AS SUBSCRIBER SHALL DEEM NECESSARY TO PROTECT ITS INTERESTS. SUBSCRIBER DOES NOT AND WILL NOT SEEK INDEMNITY FROM WELLS FARGO ALARM AGAINST ANY DAMAGES OR LOSSES CAUSED BY HAZARDS TO SUBSCRIBER’S PROPERTY. WELLS FARGO ALARM MAKES NO WARRANTY, EXPRESSED OR IMPLIED, THAT THE SYSTEMS IT *102 INSTALLS ORTHE SERVICES IT FURNISHES WILL AVERT OR PREVENT OCCURRENCES, OR THE CONSEQUENCES THEREFROM, WHICH THE SYSTEMS AND SERVICES ARE DESIGNED TO DETECT. SUBSCRIBER AGREES THAT WELLS FARGO ALARM SHALL NOT BE LIABLE FOR ANY OF SUBSCRIBER’S LOSSES OR DAMAGES, IRRESPECTIVE OF ORIGIN, TO PERSON ORTO PROPERTY, WHETHER DIRECTLY OR INDIRECTLY CAUSED BY PERFORMANCE OR NONPERFORMANCE OF ANY OBLIGATION IMPOSED BY THIS AGREEMENT OR BY NEGLIGENT ACTS OR OMISSIONS OF WELLS FARGO ALARM ITS AGENTS OR EMPLOYEES. IT IS AGREED THAT IF WELLS FARGO ALARM SHOULD BE FOUND LIABLE FOR ANY LOSSES OR DAMAGES ATTRIBUTABLE TO A FAILURE OF SYSTEMS OR SERVICES IN ANY RESPECT, ITS LIABILITY SHALL BE LIMITED TO THE ANNUAL CHARGE HEREUNDER, OR $10,000.00, WHICHEVER IS LESS. THE SUBSCRIBER MAY OBTAIN A GREATER LIMITATION OF LIABILITY, IF DESIRED, BY PAYMENT OF AN INCREASED ANNUAL RATE, WHICH SHALL BE NEGOTIATED BETWEEN THE SUBSCRIBER AND WELLS FARGO ALARM UPON THE REQUEST OF THE SUBSCRIBER IN WRITING.
On December 13, 1992, defendant’s central monitoring station received an alarm from plaintiffs store indicating a “Communication Channel Failure.” This signal alerts defendant’s operators to the fact that the alarm is not communicating and further warns that the premises is not protected. Upon receiving this alarm, defendant’s employees contacted the police and Jeffrey Bouvier. Defendant’s operator informed Jeffrey Bouvier that the alarm system was working and that the store was fully protected. Subsequently, Gilbert Bouvier called the Wells Fargo operator, who again asserted that the alarm was functioning and that the store was protected. When Gilbert Bouvier arrived at the Somer-ville store on Monday, December 14, he discovered that the store had been burglarized.
Following this incident, defendant prepared an “Attack Alarm Report” wherein it stated that “Customer was erroneously told that the primary system was working when in this instance it was not.” Moreover, defendant’s operator, Michelle Amirault, stated that she did not know the meaning of the term “Communication Channel Failure.”
DISCUSSION
As an initial matter, it is well settled that a contracting party can utilize an exculpatory clause to exempt it from its own liability. Minassian v. Ogden Suffolk Downs, Inc., 400 Mass. 490, 492 (1987). Although “any doubts about the interpretation of the release must be resolved in the plaintifffs] favor" such action is not necessary if the release is unambiguous and comprehensive. Cormier v. Cent. Massachusetts Chapter of the Nat’l Safety Council, 416 Mass. 286, 288 (1993). Thus, absent evidence of fraud, deceit or duress a court will enforce an unambiguous exculpatory clause according to its terms.[1] See id. at 288-89; see also Marsman v. Nasca, 30 Mass.App.Ct. 789, 799-800 (1991) (provisions of exculpatory clause (pertaining to Trustee’s liability), although strictly construed, are held effective except in instances of bad faith or intentional wrongdoing). This court finds that the exculpatory clause is valid and will enforce the clause according to its terms.
The exculpatory clause disclaims responsibility “for any . . . losses or damages . . . directly or indirectly caused by performance or nonperformance of any obligation imposed by this agreement or by negligent acts or omissions of Wells Fargo Alarm ...” Simply put, this clause bars all of plaintiffs claims arising from defendant’s negligent performance of its contractual duties. See New England Watch Co. v. Honeywell, Inc., 11 Mass.App.Ct. 948 (1981) (exculpatory clause bars plaintiffs claims for negligence and breach of contract arising from failure of defendant’s alarm system). Accordingly, plaintiffs claims for breach of contract (Count I) and negligence (Count III) will be dismissed.
Plaintiff asserts that the exculpatory clause does not protect against liability for fraud or misrepresentation. As a general rule, a term exempting a party from tort liability for intentional fraud or intentional misrepresentation is unenforceable. Restatement (Second) of Contracts §195 (1981); see Burten v. Milton Bradley Co., 763 F.2d 461, 465 (1st Cir. 1985); Marsman v. Nasca, 30 Mass.App.Ct. 789, 799-800 (1991); see also Houghland v. Security Alarms & Services, 755 S.W.2d 769, 773 (Term. 1988). Plaintiff, however, has not alleged that defendant’s misrepresentations were intentional; therefore these cases have no bearing on plaintiffs claim.
Two types of misrepresentations are actionable in Massachusetts: intentional misrepresentation and negligent misrepresentation. See Danca v. Taunton Savings Bank, 385 Mass. 1, 7-10 (1982); Joseph R. Nolan & Laurie J. Sortorio, Tort Law §143 (1989). In an action for intentional misrepresentation a plaintiff must prove “that the defendant made a false representation of material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon such representation as true and acted upon it to his damage.” Barrett Assocs., Inc. v. Aronson, 346 Mass. 150, 152 (1963), quoting Kilroy v. Barron, 326 Mass. 464, 465 (1950); see McEvoy Travel Bureau Inc. v. Norton Co., 408 Mass. 704, 709 (1990). Negligent misrepresentations are misrepresentations that occur without the speaker’s knowledge “that the statement is false if the truth is reasonably susceptible of actual knowledge or otherwise expressed, if through a modicum of diligence, accurate facts are available to the speaker.”[2] Acushnet *103 Federal Credit Union v. Roderick, 26 Mass.App.Ct. 604, 605 (1988) (citations omitted); see Danca v. Taunton Savings Bank, supra at 7-10 (authorizing separate measure of damages for negligent misrepresentation); Zimmerman v. Kent, 31 Mass.App.Ct. 72, 82 (1991) (applying Danca measure of damages for negligent misrepresentation). Although negligent misrepresentations are technically fraudulent, courts have treated them more as negligence actions than deceit actions. See Danca v. Taunton Savings Bank, supra at 9 (judge’s finding of negligence established recovery on grounds of negligent misrepresentation); see also Joseph P. Nolan & Laurie J. Sartorio, Tort Law §143 (1989) (mere negligence in discovering falsity is not enough for deceit action but is sufficient for negligence action).
As plaintiffs misrepresentation claim is essentially a negligence claim, it stands to reason that the exculpatory clause would protect defendant from liability arising from its negligent misrepresentations. See Nat’l Academy of Sciences v. Cambridge Trust Co., 3 Mass.App.Ct. 314, 318 (1975) (court implying in dicta that exculpatory clause would protect defendant from liability for negligent misrepresentations); see also Marsman v. Nasca, supra at 799-800 (exculpatory clause held effective except in instances of intentional wrongdoing). Accordingly, plaintiffs claim for misrepresentation (Count II) will be dismissed.
Plaintiff further contends that the exculpatory clause does not foreclose its claim for gross negligence. To date, Massachusetts appellate courts have not addressed whether an exculpatory clause can bar claims for gross negligence; rather the Supreme Judicial Court has simply held that such clauses release parties from liability arising from “ordinary negligence.” Lee v. Allied Sports Associates. Inc., 349 Mass. 544, 551 (1965). In Gillespie v. Papale, 541 F.Supp. 1042 (D.Mass. 1982), Judge Skinner considered whether, pursuant to Massachusetts law, a release bars a party’s claim for gross negligence. Judge Skinner recognized that Massachusetts courts have not ruled on this matter, and following an analysis of treatises and cases from other jurisdictions concluded that a release is not effective to bar suits for gross negligence. Id. at 1046, citing W. Prosser, Torts §68 (4th Ed. 1971); A. Corbin, Contracts §1472 (1964); Restatement (Second) of Contracts §195 (1981). Other jurisdictions, however, have held that exculpatory clauses in alarm service contracts effectively bar gross negligence claims. See, e.g., L. Luria & Son, Inc. v. Honeywell, Inc., 460 So.2d 521 (Fla.App. 1984); Continental Video Corp. v. Honeywell, Inc., 422 So.2d 35 (Fla.App. 1982); Purolator Security, Inc. v. Wells Fargo Alarm Service, 491 N.E.2d 161 (Ill.App. 1986); Stefan Jewelers v. Electro-Protective Corp., 288 S.E.2d 667 (Ga.App. 1982); Reed’s Jewelers, Inc. v. ADT Co., 260 S.E.2d 107 (N.C.App. 1979). In light of the uncertainty of the issue, it seems to me prudent to submit the case to the jury on special verdict questions concerning gross negligence. Judge Skinner’s opinion in Papale is very persuasive; and in any event the issue should be preserved for appellate review after trial.
Furthermore, plaintiff argues, albeit unsuccessfully, that the entire agreement is void because defendant fraudulently induced plaintiff to enter into the contract. Plaintiffs basis for this argument centers on the representations defendant’s agent, Hopping, made to plaintiff. Hopping stated that if the central monitoring station received a notice that the telephone wires had been cut and the store was unprotected, then the Bouviers would immediately be notified. Plaintiff claims that in reliance on this representation it entered into the alarm service contract with defendant. Thus, contends plaintiff, defendant's subsequent failure to advise it of the “Communication Channel Failure” constituted a misrepresentation which thereby rendered the contract void.
As a matter of law, an exculpatory clause does not bar subsequent actions where the release was obtained by fraud or misrepresentation. Shane v. Shane, 891 F.2d 976, 986 (1st Cir. 1989); Sher v. Sandler, 325 Mass. 348, 354 (1950). This rule applies to both fraudulent and negligent misrepresentations. Yorke v. Taylor, 332 Mass. 368, 374 (1955); Restatement (Second) of Contracts §196 (1981). Although false statements of fact are sufficient to rescind a contract, Yorke v. Taylor, supra at 371, the ordinary rule is that “false statements of opinion, of conditions to exist in the future, or of matters promissory in nature are not actionable.” Yerid v. Mason, 341 Mass. 527, 530 (1960); see JSM v. Arthur D. Little Systems Inc., 28 Mass.App.Ct. 108, 110 n.2 (1989); Cassano v. Gogos, 20 Mass.App.Ct. 348, 353-54 (1985) (differentiating between promissory statements and factual statements). An action for misrepresentation cannot be premised on the mere nonperformance of a promise. Commonwealth v. True, 16 Mass.App.Ct. 709, 711 (1983); see Galotti v. United States Trust Co., 335 Mass. 496, 501 (1957); see also Houghland v. Security Alarms & Services, 755 S.W.2d 769, 774 (Tenn. 1988); Keeton, Prosser & Keeton on the Law of Torts, §109 (5th ed. 1984) (when a promise is made in good faith the fact that it is subsequently broken does not give rise to a cause of action for misrepresentation).
In this case, no reasonable interpretation of the evidence would allow a finding of misrepresentation. Simply put, plaintiff has failed to establish that defendant’s agent misrepresented a material fact that induced plaintiff to enter into the contract. See Shane v. Shane, supra at 986. At best, the summary judgment record establishes that defendant promised to notify plaintiff in the event the store’s telephone wires were cut. The fact that defendant later breached its promise is immaterial because defendant’s statements *104 were essentially promissory in nature, and thus, not actionable as misrepresentations. See Galotti v. United States Trust Co., supra at 501; Commonwealth v. True, supra at 711, Yerid v. Mason, supra at 530.
As a final matter, this court chooses not to address plaintiffs G.L.c. 93A claim at this time. Although the facts do not seem indicative of a c. 93A violation, the interests of efficient judicial management mandate that the trial judge make a final determination of the c. 93A claim after hearing the evidence.
ORDER
Defendant’s motion is ALLOWED as to Counts I, II and III; DENIED as to Counts IV and V. Plaintiffs motion for summary judgment is DENIED.

 Plaintiffs argument that defendant fraudulently induced it to enter into the contract is discussed infra at 7-8.

 Plaintiff, in its brief, recognizes that its cause of action rests upon this type of misrepresentation. Plaintiff, however, fails to differentiate between a negligent misrepresentation and an intentional misrepresentation and summarily concludes that all misrepresentation is actionable. Indeed, the Acushnet court recognized this distinction, ruling it was reversible error for the trial judge to only instruct on intentional misrepresentation when the facts supported a claim for negligent misrepresentation. Acushnet Federal Credit Union v. Roderick, 26 Mass.App.Ct. 604, 606 (1988).