**TRUSTEES OF the PLUMBERS LOCAL NO. 519 HEALTH AND WELFARE TRUST FUND, et al., Plaintiffs,**

v.

**Jose M. GARCIA, et al., Defendants.**

**No. 85–1503–Civ.**

United States District Court, S.D. Florida.

Jan. 8, 1988.

Barry R. Lerner, Kaplan, Sicking & Bloom, P.A., Miami, Fla., for plaintiffs.

Bernstein & Berger, Miami, Fla., for defendants.

### ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT AND MOTION FOR CONTINUANCE

ATKINS, District Judge.

This Cause is before the Court on Plaintiffs' Motion for Partial Summary Judgment and for Continuance, and Defendants' Motion for Summary Judgment. Upon consideration of the pleadings, the relevant law, and the record as a whole, it is

ORDERED AND ADJUDGED as follows:

1. Plaintiffs' Motion for Partial Summary Judgment is GRANTED and Defendants' Motion for Summary Judgment is DENIED. The Court finds that the record does not present any genuine issue of material fact and that Plaintiffs are entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c).

■ Rule 56(c) requires that summary judgment be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Summary judgment is mandated against a party who, after adequate time for discovery and upon motion, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Rule 56 imposes no requirement that the moving party support its motion with affidavits or similar materials negating the opponent's claim. 106 S.Ct. at 2553. A ruling on summary judgment should be guided by the substantive evidentiary standard of proof that would apply at the trial on the merits. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The existence of some evidence to support the nonmoving party's position is insufficient to avoid summary judgment; the judge's inquiry concerns whether reasonable jurors could find by a preponderance of the evidence in a civil case that the nonmoving party in entitled to a verdict. 106 S.Ct. at 2512.

■ Plaintiffs allege that The Pump House is bound by a collective bargaining

agreement between Gulf Contractors, Inc. and Plumbers Local Union No. 519 of Miami, and obligated to make fringe benefit contributions thereunder, although it is not a signatory to the agreement. Courts have considered the circumstances in which the terms of a collective bargaining agreement with a signatory company can be applied to a nonsignatory company. "Double-breasted" operations provide one set of circumstances in which a nonsignatory company will be bound by a labor agreement. A "double-breasted" operation is one in which a contractor operates one company that is a party to a labor agreement and a second company that is non-union. In *Carpenters' Local Union No. 1478 v. Stevens*, 743 F.2d 1271 (9th Cir.1984), the court explained the purpose behind these operations.

> Such "double-breasted" operations allow a contractor to compete for both union and non-union work. The non-union company can bid competitively on jobs that do not require union contractors, while the union company continues to bid on jobs requiring union contractors.

*Id.* at 1275. This arrangement is not inherently illegal, and unions have attempted to extend the application of collective bargaining agreements to nonsignatories in double-breasted operations by bringing claims for breach of a collective bargaining agreement under section 301 of the Labor Management Relations Act, 29 U.S.C., section 185, for unfair labor practices under sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act, 29 U.S.C., section 158, for failure to make fringe benefit contributions under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C., sections 1001–1461, and for antitrust violations under the Sherman and Clayton Antitrust Acts, 15 U.S.C., sections 1–7, 12–27. *Id.* at 1276; *Carpenters Local Union No. 1846 v. Pratt–Farnsworth, Inc.*, 690 F.2d 489 (5th Cir.1982).

■ While antitrust challenges to double-breasted operations have not been successful, *Associated Gen. Contractors v. California State Council of Carpenters*, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983), courts considering the remaining three approaches have employed the "single employer" and "alter ego" doctrines to determine whether the terms of a labor agreement are binding on both signatory and nonsignatory. *Pratt–Farnsworth*, 690 F.2d at 504–509, 518–519; *Stevens*, 743 F.2d at 1276–1277. Under the single employer doctrine, both signatory and nonsignatory are bound by a labor agreement if they are a single employer and the employees of each constitute a single bargaining unit. *Stevens*, 743 F.2d at 1276 [citing *Brotherhood of Teamsters, Local No. 70 v. California Consolidators, Inc.*, 693 F.2d 81, 82–83 (9th Cir.1982)]. Under alter ego theory, both signatory and nonsignatory are bound if they are a single employer and there is an attempt to avoid the obligations of a collective bargaining agreement through a sham transaction or a technical change in operation. *Id.* at 1277 [citing *NLRB v. Al Bryant*, 711 F.2d 543 (3d Cir.1983)]. (No evidence has been presented to support a finding that there has been an attempt to avoid contractual obligations through a sham transaction in this case, and therefore the court's analysis will focus on the single employer doctrine.)

■ The factors for determining whether two or more businesses constitute a single employer include: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations, and (4) common ownership. *Stevens*, 743 F.2d at 1276. No factor is controlling and all factors need not be present to support a finding that two businesses constitute a single employer. *Id.* The test for determining the appropriate bargaining unit is the "community of interest" test. *Pratt–Farnsworth*, 690 F.2d at 505. To assess whether a community of interests exists between the employees of the signatory and nonsignatory, courts look to factors including bargaining history, operational integration, geographic proximity, common supervision, similarity in job function, and

degree of employee interchange. *NLRB v. J.C. Penney Co.,* 559 F.2d 373, 375 (5th Cir.1977).

Although these doctrines involve questions of labor law, the Supreme Court has held that federal courts may decide labor law questions that emerge as collateral issues in suits brought under independent federal remedies. *Connell Constr. Co. v. Plumbers Local Union No. 100,* 421 U.S. 616, 95 S.Ct. 1830, 44 L.Ed.2d 418 (1975). In *Pratt–Farnsworth,* the court noted that the power to decide collateral labor law issues applies to ERISA claims.

> There can be no doubt that ERISA provides a remedial scheme independent of the NLRA. To the extent that collateral labor law issues arise in the course of an ERISA claim, the federal courts should be empowered to decide them.

*Id.* at 519.

Plaintiffs have brought this claim pursuant to ERISA. They seek fringe benefit contributions and other payments from The Pump House and Jose and Ellen Garcia as surviving directors of Gulf Contractors of Miami, Inc. The Pump House, Inc. was incorporated in 1965. *See* Florida Department of State Division of Corporations printout attached to Defendants' Motion for Summary Judgment. It is a subcontractor, installing irrigation, or sprinkler, systems. Deposition of Jose Garcia at 7, 12–13. It was purchased by Jose and Ellen Garcia in 1979. Deposition of Jose Garcia at 7. Jose Garcia is the president of The Pump House, and Ellen Garcia is its secretary and treasurer. Deposition of Jose Garcia at 5; Deposition of Ellen Garcia at 4. The number of workers it employs varies depending upon the number needed to perform the work required by their various contracts. Deposition of Jose Garcia at 11–12. They employ primarily non-union workers. Deposition of Jose Garcia at 28–29. Since it was purchased by the Garcias, The Pump House has had only one union job. Deposition of Jose Garcia at 16. It involved installing the irrigation system at the main operations center of Sun Bank.

Deposition of Jose Garcia at 16. The Pump House entered into a collective bargaining agreement with a different union for that job. Deposition of Jose Garcia at 16.

Gulf Contractors of Miami, Inc. was incorporated in 1984. Florida Department of State Division of Corporations printout attached to Defendants' Motion for Summary Judgment. It was formed by the Garcias to do one job involving the installation of an irrigation system at the Nationwide Executive Center. Deposition of Jose Garcia at 23. Garcia was informed by a representative of the Plumbers Local Union No. 519 that job would have to be performed by union labor. Deposition of Jose Garcia at 27. Garcia sought to keep The Pump House separate from this union job "[b]ecause the jobs that The Pump House gets are priced a lot lower than the jobs you would price if you knew you had to pay higher wages and benefits and so forth." Deposition of Jose Garcia at 28. Although he entered the contract with the contractor for this job, M.R. Harrison Construction Company, as president of the Pump House, Deposition of Jose Garcia at 32–33, he subsequently entered into the collective bargaining agreement with Local 519 as president of the newly-formed Gulf Contractors. Deposition of Jose Garcia at 33. The contract between M.R. Harrison Construction and The Pump House was never changed to reflect that Gulf Contractors would perform the work. Deposition of Jose Garcia at 33. The collective bargaining agreement required the "Employer" to make contributions to union fringe benefit and related funds. It defined "Employer" as follows:

> The work "Employer" as used in this Agreement shall mean the business entity described above, whether a sole proprietorship, a joint venture, a partnership or a corporation. If any Employer as defined herein, or if any partner or if any person holding a controlling or majority interest in any corporate Employer, controls or operates any other business within the trade and territorial jurisdiction of the Union, such other business entity shall either have a signed with the Union

or this Agreement shall be interpreted as including such business entity under the term "Employer". For the purpose of this paragraph, a person will be deemed to "control or operate" a business entity if he is in charge of its labor relations in whole or in part.

Joint Agreement, Article I, Section 8b. The territorial jurisdiction of Local 519 included Dade County, Florida, *see* Joint Agreement, Article I, Section 4, in which work on the Nationwide Executive Center was performed. The trade jurisdiction included "[a]ll lawn sprinkler systems." Joint Agreement, Article IV, Section 1c.

The Pump House and Gulf Contractors were located at 10750 Northwest 25th Street in Miami. Deposition of Jose Garcia at 22; Deposition of Ellen Garcia at 5. They did not have separate offices or telephone numbers. Deposition of Ellen Garcia at 6. Separate books were maintained for each company, and each had separate mail, or "in" boxes in the Northwest 25th Street office, Deposition of Ellen Garcia at 9, "[s]ince Gulf Contractors was for one specific job ..." Deposition of Ellen Garcia at 6. In her capacity as office manager or supervisor, Ellen Garcia would handle work for both The Pump House and Gulf Contractors. Deposition of Ellen Garcia at 6. Ellen Garcia was primarily responsible for Pump House operations, Deposition of Ellen Garcia at 13, while Jose Garcia was primarily responsible for Gulf Contractors operations. Deposition of Ellen Garcia at 6. However, both Ellen and Jose Garcia were responsible for the management of the two companies. Deposition of Ellen Garcia at 13. And, Jose Garcia would participate in Pump House operations:

Whatever needs to be done, so to speak, my duties are that, design some of the plans, to seek some jobs, to take care of equipment, do field supervision, primarily to get involved with the financing end of it ...

.        .        .        .        .

Ellen runs the day-to-day operations of The Pump House ...

Deposition of Jose Garcia at 9. Both Ellen and Jose Garcia had signature authority for the checking accounts of The Pump House and Gulf Contractors. Deposition of Ellen Garcia at 15. Jose Garcia was the President and Director of both The Pump House and Gulf Contractors, and Ellen Garcia was the Secretary and Director of both The Pump House and Gulf Contractors. Florida Department of State Division of Corporations printout attached to Defendants' Motion for Summary Judgment.

Ellen Garcia was primarily responsible for labor relations for The Pump House. Deposition of Ellen Garcia at 12; Deposition of Jose Garcia at 10. She was responsible for hiring and payroll. Deposition of Ellen Garcia at 12–13. Jose Garcia participated in labor relations from time to time.

Q   Would you get involved from time to time in that area of responsibility?

A   From time to time, I guess it's fair to say that I get involved in anything or everything.

Q   Other than you and your wife, would there be anyone else at The Pump House who would be responsible for employment and wages and that sort of thing?

A   No.

Deposition of Jose Garcia at 10–11. Jose Garcia was primarily responsible for labor relations for Gulf Contractors. Deposition of Ellen Garcia at 12. Ellen Garcia participated in labor relations for Gulf Contractors as well.

A   We just had to monitor what [the workers] were doing and the number of hours they were working, and if they didn't show up or something, then we'd have to call the hall and they'd send somebody else over.

Deposition of Ellen Garcia at 10.

Q.   Who did the payroll for The Pump House during this time period?

A   I did.

Q   Who did the payroll for Gulf Contractors during this time period?

A   Jose.

Q He wrote the checks?

A No. I wrote the checks. I believe maybe he wrote a few. It was so few. It was so little.

Deposition of Ellen Garcia at 13.

Defendants argue that The Pump House and Gulf Contractors cannot be held to be a single employer on the ground that The Pump House and Gulf Contractors had been under contract with different unions, that Jose Garcia was not in charge of labor relations for The Pump House, that it is "ludicrous" to hold that a new separate and distinct corporation can bind an older one to a collective bargaining agreement, and that Jose Garcia did not have a majority interest in either company. They also assert that bargaining unit determinations must be made by the National Labor Relations Board and not by the court. Defendants' arguments do not fully assess the facts as revealed by the record in light of the factors supporting single employer determinations.

Even when viewed in the light most favorable to Defendants, the record does not present a genuine issue of material fact as to whether Defendants' operation was a double-breasted one. The Garcias operated one company, Gulf Contractors, that was party to a collective bargaining agreement with Local Union No. 519, and they operated another company, The Pump House, that was primarily non-union. Their reasons for doing so conform to the purposes behind double-breasted operations observed by the courts. Jose Garcia testified that he sought to keep The Pump House separate because the jobs that it got were priced lower than union jobs. As noted by the court in *Stevens*, 743 F.2d at 1275, double-breasted operations allow the non-union company to bid competitively on jobs that do not require union contractors.

Nor does the record present a genuine issue of material fact as to whether The Pump House and Gulf Contractors constitute a single employer. First, the record supports a finding that the operations of the two companies were interrelated. Both companies had the same officers and directors. They operated out of the same office. The Pump House bid for and entered into the contract with the general contractor for the Nationwide Executive Center job. Payments from the general contractor for the Nationwide Executive Center job went to the Pump House bank account. Deposition of Jose Garcia at 37. Both directors participated in the operations of the companies.

Second, the two companies were under common management. Ellen Garcia testified that both she and Jose Garcia were responsible for management of the two companies. Both she and Jose Garcia testified as to overlapping responsibilities in management and operation of the companies.

Third, control over labor relations was centralized. Both directors participated in labor relations for the two companies. Ellen Garcia testified that she wrote the payroll checks for both companies. Both testified that they monitored the status of workers at the job sites. Jose Garcia testified that he took part in all aspects of the companies, including labor relations.

Fourth, the companies were commonly owned by Ellen and Jose Garcia. Affidavit of Jose Garcia at par. 7; Deposition of Jose Garcia at 7.

As noted above, this Court has the authority to determine collateral labor law issues, including the appropriate bargaining unit, in ERISA cases. The record does not present a genuine issue of material fact as to whether the employees of the two companies constitute a single bargaining unit. First, as noted above, the companies are operationally integrated. Second, employees of both companies work in geographic proximity in South Florida. Third, employees of both companies perform similar work as plumbers installing irrigation systems. Fourth, employees of both companies are subject to common supervision; although the supervision for each company is handled primarily by one director, both directors participated in the supervision for

both companies. Fifth, the absence of long bargaining history between Gulf Contractors and Local Union No. 519 militates against the distinction between the employees of each company, and favors a finding that the two companies constitute a single bargaining unit. Finally, the record does not indicate that there was any interchange of employees between the two companies. The absence of this factor does not abrogate a finding of the appropriate bargaining unit under *J.C. Penney Co.*, 559 F.2d at 375 ["[T]he Board looks to *such factors as* ..."].

The definition of "Employer" in the collective bargaining agreement Gulf Contractors and Local Union No. 519 is consistent with the single employer doctrine, and may reflect union attempts to pierce double-breasted operations. The agreement provides that any person holding a controlling or majority interest in any corporate employer who controls or operates any other business in the trade and territorial jurisdiction of the Union shall subject that second business to the terms of the agreement. The agreement defines "control or operate" as being in charge of labor relations in whole or in part. Both owners of both companies in this case controlled or operated The Pump House within the meaning of the agreement. Ellen Garcia testified that she was in charge of labor relations for The Pump House. Jose Garcia testified that he participated in labor relations for The Pump House from time to time. The agreement only requires that a person be charged with labor relations in whole *or in part.* Thus, both owners, representing the controlling interest in the signatory, Gulf Construction, controlled or operated The Pump House as defined by the agreement, thereby rendering The Pump House an "Employer" within the meaning of the agreement.

Defendants further argue that the collective bargaining agreement between Local Union No. 519 and Gulf Contractors could have no further force and effect against The Pump House upon dissolution of Gulf Contractors. Plaintiffs argue that the automatic renewal clause, pursuant to which the agreement is automatically renewed unless a written notice terminating it is sent to the Union, continues to bind Gulf Contractors and its "sister" company, The Pump House, because no written notice terminating the agreement was sent. Plaintiffs argue that automatic renewal provisions are typical in collective bargaining agreements. *Oil Workers Int'l. Union Local No. 463 v. Texoma Natural Gas Co.*, 146 F.2d 62 (5th Cir.1944).

■ Generally, employees' rights under a collective bargaining agreement do not survive a discontinuance of business and a termination of operations. *Fraser v. Magic Chef–Food Giant Markets, Inc.*, 324 F.2d 853 (6th Cir.1963). In *Fraser*, employees sought to recover wages they would have received if the company had continued to operate for the duration of the collective bargaining agreement. Their claim was rejected. The *Fraser* holding was explained in *United Steelworkers v. North Bend Terminal Co.*, 752 F.2d 256, 259 (6th Cir.1984): "The court held that, because a collective bargaining agreement is a trade agreement rather than a contract of employment, the employees had no right to benefits for time not actually worked."

■ An employer remains liable for fringe benefit contributions after dissolution, however, if the claim for benefits accrues before the business is dissolved. *Cornick v. Hi Grade Cleaners, Inc.*, 595 F.Supp. 718 (E.D.Ill.1984). In *Cornick*, the Trustees of the union funds argued that the Illinois "survival statute", which provides for suits against dissolved corporations, permitted them to proceed against the defendant corporation. The court rejected the claim on the ground that it did not accrue prior to dissolution. The Trustees sought delinquent contributions to pension and welfare funds for the period from October 1, 1983 through March 30, 1984. The corporation was dissolved on March 31, 1982.

Gulf Contractors entered into the collective bargaining agreement with Local Union No. 519 on February 17, 1984. The term of the agreement ran through April 30, 1985, but was subject to the automatic renewal provision. It provided:

This Agreement shall be in effect as of May 1, 1983 and shall remain in effect until the expiration date of April 30, 1985 and shall automatically renew itself from year to year thereafter unless written notice of a desire to terminate or change this Agreement is given by either party to the other party at least sixty (60) days prior to the expiration date, or anniversary of the expiration date.

Joint Agreement, Article XVI, Section 1. The Union did not receive written notice from Gulf Contractors indicating a desire to terminate or change the Agreement within the sixty day period required by the Agreement, Affidavit of John Lindstrom at par. 4, and it was automatically renewed as of May 1, 1985. Gulf Contractors was involuntarily dissolved on November 1, 1985. Plaintiffs allege that Gulf Contractors failed to make fringe benefit contributions during the period from February 17, 1984 to May 31, 1984. Second Amended Complaint at par. 14. They further allege that The Pump House failed to make fringe benefit contributions for a "period of time unknown to Plaintiffs with specificity." Second Amended Complaint at par. 15.

The Court finds that the record does not present any genuine issue of material fact as to whether Gulf Contractors and The Pump House are liable as employers for delinquent contributions owed to the union funds pursuant to the collective bargaining agreement prior to the dissolution of Gulf Contractors. Plaintiffs' claim against Gulf Contractors for failure to make payments to the funds from February 17, 1984 through May 31, 1984, accrued prior to the dissolution of Gulf Contractors on November 1, 1985, and while the collective bargaining agreement was in effect. Plaintiffs are authorized by Section 607.297 of the Florida Statutes, which provides for the

survival of any remedy against a corporation which has been dissolved involuntarily if the claim is brought within three years after dissolution, to bring this action against Gulf Contractors, its officers and directors, and The Pump House. Plaintiffs' remedy under ERISA is not impaired by the dissolution of Gulf Contractors. Specifically, their remedy against both Gulf Contractors and The Pump House under the single employer doctrine in an ERISA action has not been taken away by the dissolution.

As to Plaintiffs' allegation that The Pump House is responsible for delinquent contributions for a period unknown, the obligations of The Pump House as an employer under the single employer doctrine and definition of "Employer" provided by the collective bargaining agreement must be coextensive with those of Gulf Contractors. Both case law and the terms of the agreement limit an employer's obligation to contribute to union funds to time actually worked by union employees. *See North Bend Terminal*, 752 F.2d at 259 ["[E]mployees had no right to benefits for time not actually worked."]; Joint Agreement, Article VI, Section 2a ["If no monies are due, the Employer shall forward the forms with an indication that no men were employed for the week covered by the report."] and Section 2b ["For purposes of this article, each hour paid for, including hours attributable to show up time, travel time and other hours for which pay is received by the employee in accordance with the Collective Bargaining Agreement, shall be counted as hours for which contributions are payable."]

Based on the foregoing, the Court finds that there exists no genuine issue of material fact as to liability, and the Plaintiffs are entitled to judgment as a matter of law. The amount of damages remains to be determined.

2. Plaintiffs' Verified Motion for Continuance is GRANTED.

a. The Cause is hereby removed from the January 4, 1988, trial calendar. An order resetting trial will be forthcoming.

b. Defendants are hereby directed to permit Plaintiffs' auditors to conduct a shop audit of the financial books and records of The Pump House, consistent with the audit already performed on the financial books and records of Gulf Contractors, in accordance with the Court's earlier order directing Defendants to immediately permit Plaintiffs' to audit both Gulf Contractors and The Pump House. Defendants shall permit the shop audit to be conducted within ten days of the file stamp date on this order.