**DEFAULT PROOF CREDIT CARD SYSTEM, INC., a Florida corporation, Plaintiff,**

v.

**STATE STREET BANK & TRUST COMPANY, a Massachusetts corporation, and Life Insurance Company of Georgia, a Georgia corporation, Defendants.**

Nos. 89–0707–CIV, 90–0290–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Dec. 28, 1990.

R. Bruce Wallace, Taylor, Brion, Buker & Greene, Miami, Fla., for plaintiff.

Janet T. Munn, Steel Hector & Davis, Miami, Fla., for State Street Bank.

Darrell Payne, Miami, Fla., Douglas Campbell, Atlanta, Ga., for Life Ins. Co. of Ga.

## ORDER DENYING PARTIES' CROSS–MOTIONS FOR SUMMARY JUDGMENT

SPELLMAN, District Judge.

THIS CAUSE comes before the Court on Plaintiff's Motion for Partial Summary Judgment and Defendant's Cross–Motion for Summary Judgment.

### Background

In early 1988, James Branam, sales marketing manager of Plaintiff, Default Proof Credit Card System, Inc. ("Default Proof"), a Florida corporation, contacted Defendant, State Street Bank & Trust Company ("State Street"), a Massachusetts corporation, to determine whether Defendant was interested in engaging the services of Plaintiff to utilize Plaintiff's Resource System.[1] Pursuant to said Resource System,

---

1. Default Proof held the patent issued to Vin- cent Cuervo, applied for in 1985 and issued in

the guaranteed cash surrender value of life insurance policies would be employed to secure credit card debt. Subsequently, Branam met with Susan Comeau, senior vice-president and division head of the credit card services division of State Street, Anne Keinz, vice-president and manager of credit card marketing of State Street, and Michael Dellisola, vice-president in charge of operations of the credit card division of State Street on May 19, 1988, in Quincy, Massachusetts.

At said meeting, Plaintiff offered to Defendant a form contract that recognized the system as the property of Default Proof. The contract further provided that the relationship between the parties and any disputes between them would be determined in accordance with Florida law. Plaintiff alleges that at the May 19, 1988 meeting, the Parties reached an agreement in principle. Pursuant to the alleged agreement, State Street would offer a secured credit card, based on Default Proof's Resource System. The parties signed no contract at this time; their agreement was subject to confirmation of insurance company interest in participation in such a program.

Furthermore, Plaintiff contends that the parties agreed that Defendant would test the waters with insurance companies with respect to the Resource System. As a result of Defendant's employees' lack of familiarity with the working of the Resource System, Branam joined in a presentation made to Connecticut Mutual Life Insurance Company ("Connecticut Mutual") in Hartford, Connecticut. The second meeting between Default Proof and State Street Bank occurred on August 8, 1988, in Hartford where the parties made the presentation to Connecticut Mutual. Branam was present to answer technical questions; however, Plaintiff alleges that State Street asked him not to volunteer that he represented Default Proof rather than State Street. After Connecticut Mutual's apparent interest, State Street transmitted copies of the presentation material that Plaintiff had de-

veloped as an initial step in enlisting those insurance companies into the Resource System. During this period of time, Defendant made numerous phone calls to Plaintiff requesting technical and marketing information on the Resource System as it had been developed by Default Proof.

The next meeting between the parties occurred in Coral Gables, Florida on August 31, 1988. Default Proof proffered a more specifically tailored draft contract between the parties at this meeting. Said draft was in the nature of a license agreement; it recognized Default Proof's basis in the patent and proprietary interest in the Resource System. The Florida choice of law provision remained in the contract.

Default Proof alleges that through the meeting, and until November 1988, no State Street representative voiced any specific objections to any provisions in the contracts proffered by Default Proof with one exception: State Street wished to be protected in the event of Default Proof's bankruptcy. Default Proof prepared an exhibit to the draft agreement to cover that contingency. Defendant indicated that it wished to have its own legal department produce a draft of the contract in a format consistent with other State Street contracts. Plaintiff alleges that State Street continued to ask Default Proof for information concerning the intricacies of its product and State Street continued to market the Resource System to insurance companies.

In October or November, 1988, Life Insurance Company of Georgia ("Life of Georgia") expressed to State Street an interest in utilizing the Resource System. In December 1988, State Street tendered an agreement to Default Proof. The draft agreement failed to recognize Default Proof's proprietary interest in the Resource System, and provided for the application of Massachusetts law. Default Proof eventually acceded to all of the non-priced terms suggested by State Street,

1988, concerning the utilization of the cash surrender value of life insurance policies as collateral security for credit cards. Subsequent to the

application for the patent, Cuervo had formed Default Proof.

save the ownership of the Resource System and the choice of law.

A final meeting took place in December, 1988, in Quincy, Massachusetts at which time it became apparent that an agreement between the parties would not be reached. State Street subsequently terminated discussions with Default Proof and informed Default Proof that it considered no information it received from Default Proof confidential or proprietary, and that State Street was free to use whatever information it had obtained as it saw fit.

Shortly prior to State Street's so informing Default Proof, State Street Bank hired Gary Conway to promote the system. Within the next several months, State Street entered into formal letters of intent with Connecticut Mutual and Life of Georgia to issue credit cards secured by the guaranteed cash surrender value of the life insurance policies of those two companies. Plaintiff alleges that the system to be used under the letters of intent was essentially the same system that Plaintiff had obtained the patent for on January 5, 1988 and Defendant, with the assistance of Plaintiff, had proposed to those two life insurance companies in 1988. Connecticut Mutual and Life of Georgia recognized the information concerning the system as proprietary and confidential in the letters of intent to State Street. Life of Georgia and Connecticut Mutual also agreed with State Street that they would not enter into any agreement with any other entity offering a similar system.

Default Proof brought this action against State Street in April, 1989. Plaintiff alleged Unfair Competition, Civil Theft, Fraud, Misrepresentation, and Violation of the Lanham Act; Plaintiff seeks declaratory relief and damages. Plaintiff brought a Motion for Partial Summary Judgment on Counts I and VI of the Amended Complaint in July, 1989. Defendant brought a Cross–Motion for Summary Judgment in September, 1989.

On July 23, 1990, Special Master Herbert S. Shapiro submitted a Report and Recommendation determining that genuine issues of material fact exist in the instant case. Accordingly, he recommended that Cross–Motions for Summary Judgment be denied.

### Standard of Review

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P.R. 56(c). Summary judgment is mandated against a party who, after adequate time for discovery and upon motion, fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In ruling on a motion for summary judgment, it is the Court's obligation to review the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). A ruling on summary judgment should be guided by the substantive evidentiary standard of proof that would apply at the trial on the merits. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If there is no genuine issue of material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Trustees of the Plumbers Local No. 519 Health and Welfare Trust Fund v. Garcia*, 677 F.Supp. 1554, 1556 (S.D.Fla. 1988). Summary judgment is, however, an extreme remedy that should not be granted unless the moving party has established the right to judgment beyond controversy. *Id.*

### Discussion

#### I. Choice of Law

■ In determining which state law governs an action, a federal district court sitting in diversity must apply the choice of

law rules of the forum state. *Klaxon Company v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The Supreme Court of Florida adopted the Restatement (Second) of Conflict of Laws "significant relationship" test for the choice of substantive law in tort cases. *Bishop v. Florida Specialty Paint Company*, 389 So.2d 999 (Fla.1980). The standards relevant to the choice-of-law inquiry for tort claims are articulated in section 145 of the Restatement:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.[2]

(2) Contacts to be taken into consideration in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

■ In analyzing the choice of law question, the Special Master determined that the ultimate effect of the acts complained of—the misappropriation of the alleged trade secrets and the misapplication thereof—adversely affected the rights and profits of Plaintiff in Florida: "While the 'complained of activity' took place in Massachusetts and in Georgia, the results thereof allegedly were felt in Florida at the place of business of Default Proof." Report and Recommendation, at 4. Furthermore, the Special Master found that the parties relationship was centered in Florida. Consequently, the Special Master concluded that Florida law should apply in the instant case. The undersigned disagrees with the Special Master's recommendation in this regard.

■ Comments e and f to section 145 of the Restatement (Second) of Conflicts of Law lend special insight into the application of the factors enumerated in section 145(2). The first factor—the place where the injury occurred—does not play a significant role where, as here, the injury has occurred in two or more states. Rather, the place where the conduct occurred, is given particular weight in the case of unfair competition, since there is no demonstrable place of injury.[3] Restatement (Sec-

---

**2.** The general choice of law principles under section 6 of the Restatement are:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interest of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and,

(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971).

**3.** Comment f to section 145 states:

[T]he place of injury is less significant in the case of fraudulent misrepresentations and of such unfair competition as consists of false advertising and the misappropriation of trade values. The injury suffered through false advertising is the loss of customers or of trade. Such customers or trade will frequently be lost in two or more states. The effect of the loss, which is pecuniary in its nature will normally be felt most severely at the plaintiff's headquarters or principal place of business. But this place may have only a slight relationship to the defendant's activities and to the plaintiff's loss of customers or trade. The situation is essentially the same when misappropriation of the plaintiff's trade values is involved, except that the plaintiff may have suffered no pecuniary loss but the defendant rather may have obtained an unfair profit. For all of these reasons, the place of injury does not play so important a role for choice-of-law purposes in the case of false

ond) of Conflicts of Law § 145, comments e and f (1971).

■ In addition, Defendant asserts that inasmuch as Plaintiff seeks damages and injunctive relief for State Street's purported misuse of information allegedly disclosed in confidence, it is the location of State Street's purported misuse of Plaintiff's confidential information that determines the location of State Street's conduct. In the case at bar, the alleged use and acquisition of Plaintiff's purported confidential information occurred primarily in Massachusetts. Plaintiff has shown no reason why Plaintiff's domicile, where the effect of the loss was most severely felt, has any significant relationship to Defendant's activities or Plaintiff's loss of sales. Consequently, the place of Defendant's conduct is entitled to the greatest weight among the section 145 factors in this case; the Court must apply Massachusetts law. *See Bates v. Cook, Inc.*, 615 F.Supp. 662, 678 (M.D.Fla.1984).

Furthermore, the remaining two factors do not militate against the application of Massachusetts law. Initially, the significance of the third factor—the domicile, residence, nationality, place of incorporation and place of business of the parties—depends largely upon the extent to which they are grouped with other contacts, and generally carries little weight in and of itself. Restatement (Second) of Conflicts of Law § 145, comment e. In the present case, Plaintiff is a resident of Florida, Defendant is a resident of Massachusetts. Thus, the third factor does little to sway the scales in either direction and must be considered a neutral factor.

Finally, this Court must consider the place where the relationship, if any, between the parties is centered. This Court is not persuaded by the Special Master's finding that the parties relationship was centered in Florida or that the center of the parties relationship is controlling. Although the majority of the meetings be-

advertising and the misappropriation of trade values as in other kinds of torts. Instead, the principal location of the defendant's conduct is the contact that will usually be given the

tween the parties occurred in Massachusetts, no state clearly emerges as the central place of the parties relationship. Insofar as this is not a case where the central place of the parties relationship is of special importance, the Court need not decide in which state the relationship is centered. *See* Restatement (Second) of Conflicts of Law § 145, comment e (1971). For the foregoing reasons, this Court finds that the law of Massachusetts applies to the instant action.

## II. Count I–Common Law Unfair Competition

Massachusetts courts have adopted analysis under the Restatement of Torts in trade secret cases. *See Burten v. Milton Bradley Co.*, 763 F.2d 461, 463 n. 2 (1st Cir.1985). Section 757 of the Restatement of Torts provides:

One who discloses or uses another's trade secret, without a privilege to do so, is liable to the other if

(a) he discovered the secret by improper means, or

(b) his disclosure or use constitutes a breach of confidence reposed in him by the other in disclosing the secret to him, or

(c) he learned the secret from a third person with notice of the facts that it was a secret and that the third person discovered it by improper means or that the third person's disclosure of it was otherwise a breach of his duty to the other, or

(d) he learned the secret with notice of the facts that it was a secret and that its disclosure was made to him by mistake.

Restatement of Torts § 757 (1939). Typically, the essence of the wrong is the "breach of the duty not to disclose or to use without permission confidential information acquired from another." *Burten, supra*, at 462–63 (citing *Jet Spray Cooler, Inc. v. Crampton*, 377 Mass. 159, 165, 385 N.E.2d 1349, 1354 (1979)). In *Burten*, the

greatest weight in determining the state whose local law determines the rights and liabilities that arise from false advertising and the misappropriation of trade values.

United States District Court for the First Circuit stated:

> In order to successfully establish a cause of action for misappropriation ... a plaintiff must show that he or she shared a confidential relationship with defendant, possessed a trade secret, disclosed it to the defendant, and that the defendant made use of the disclosure in breach of the confidence reposed in him.

*Id.* at 463.

### A. Confidential Relationship

■ Under Massachusetts law, a confidential relationship arises by operation of law. The parties affiliations and the context of the disclosures are determinative. *Id.* (citing Milgram, *Trade Secrets* § 4.03 at 4–12). The parties will be required to receive information in confidence where the facts indicate that disclosure was made to facilitate a specific relationship—for example, disclosure to a prospective purchaser to enable him to appraise the value of the secret.

A confidential relationship will generally be implied where disclosures have been made in business relationships between prospective licensees and licensors. *Id.; see also* Hutter, *Trade Secret Misappropriation: A Lawyer's Practical Approach to the Case Law*, 1 W.New Eng.L.Rev. 1, 24–25 (1978). The formation of a confidential relationship requires the disclosee to maintain the information received in secrecy. The unauthorized appropriation or disclosure of another's trade secret becomes the basis for an action in tort. *Id.*[4]

Furthermore, the underlying goal of the law protecting trade secrets is to encourage the formulation and promulgation of ideas by ensuring that inventors benefit from their creations. *Jet Spray, supra,* 377 Mass. at 166–67, 385 N.E.2d at 1354–55. "Massachusetts encourages the protection of trade secrets not only because the public has a manifest interest in com-

mercial innovation and development, but also because it has an interest in the maintenance of standards of commercial ethics." *Burten, supra,* at 467.

■ Defendant argues that Default Proof at no time stated to any of its representatives that any information being imparted to the cash surrender value program was given in confidence or that it was a trade secret of their own. In addition, Defendant contends that Plaintiff took no steps to hold any of its allegedly proprietary information secret but communicated it to Defendant without restriction.

Moreover, State Street asserts that if Default Proof did possess any trade secret or proprietary interest in a program utilizing cash surrender values of life insurance policies as collateral for credit cards, it lost such proprietary interest when it solicited customers for its program and publicized such program without any requirement by Plaintiff of acknowledgement of confidentiality. Defendant alleges that the only time Plaintiff took any precaution of confidentiality was when the financial statement of Vincent Cuervo was placed in a sealed envelope marked "confidential" and transmitted to State Street.

Furthermore, Defendant cites the deposition of James Branam in which Mr. Branam testifies that he never expressly indicated to anyone that the Resource System brochure was confidential. Defendant concludes that Plaintiff asked for no agreement of confidentiality and received none. Consequently, Defendant argues that Plaintiff has no right to claim misappropriation of its trade secret and summary judgment must be entered against Plaintiff. The undersigned is not persuaded by Defendant's arguments in this regard.

■ Defendant's arguments fail to acknowledge that under Massachusetts law—which Defendant argues and this Court agrees is the controlling law in the case at

---

**4.** The Supreme Judicial Court of Massachusetts articulated this concept:

> If the defendant has acquired the information as a result of a confidential relationship which he enjoyed with the plaintiff, and, if the defendant has used the information without

the permission of the plaintiff, then the defendant's use of the information is wrongful, and the defendant is liable to the plaintiff in damages 'for the wrongful use of the information.'
*Jet Spray Cooler, Inc. v. Crampton,* 377 Mass. 159, 168, 385 N.E.2d 1349, 1355 (1979).

bar—there is no requirement that a confidential relationship be expressly established. Rather, a confidential relationship will be implied where the facts demonstrate that disclosure was made to promote a special relationship. *Burten, supra,* at 463. This Court believes that it is for the jury to determine whether the negotiations between the parties were sufficient to satisfy this standard. On that basis alone, an issue of material fact remains unresolved and, consequently, the parties cross-motions for summary judgment must be denied.

### B. Trade Secret

Furthermore, the undersigned agrees with the Special Master that several additional questions of material fact remain unresolved including whether Plaintiff had a trade secret in the Resource System. Massachusetts has endorsed the Restatement definition of a trade secret. *Burten v. Milton Bradley Co.*, 763 F.2d 461, 463 n. 2 (1st Cir.1985). Comment b to Section 757 defines a trade secret as any "formula, pattern, device, or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.... A trade secret is a process or device for continuous use in the operation of the business." Restatement of Torts § 757 comment b (1939).

A trade secret must typically be known only in the particular business in which it is used. While it is not required that only the proprietor of the business know the secret, a substantial element of secrecy must exist. *Id.* Significantly, an exact definition of trade secret is not possible. The Restatement enumerates several factors to be considered in determining whether given information constitutes a trade secret including:

> (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Id.*

 In the instant case, Default Proof has alleged that it has created a method of securing credit card debt with the guaranteed cash surrender value of life insurance policies and that this creation constitutes a trade secret. Defendant asserts that Plaintiff's contentions in this regard are subjective and self-serving. Defendant argues that inasmuch as the concept was fully disclosed in Plaintiff's patent, the concept of a credit card secured by cash surrender value of life insurance cannot constitute a trade secret as a matter of law. The undersigned disagrees. The fact that Plaintiff patented the Resource System does not, in itself, preclude Plaintiff from claiming the existence of a trade secret. Whether Plaintiff possessed a trade secret in the case at bar, and the application of the instant facts to the factors articulated above presents a triable issue of fact.

### III. The Remaining Counts

In addition, Plaintiff, in its First Amended Complaint, brings claims against Defendant for Civil Theft, Common Law Fraud, Negligent Misrepresentation, Violation of the Lanham Act and Declaratory Relief. The Special Master found that in the present case there exist triable issues with respect to whether any trade secret existed and whether it was revealed to Defendant in confidence. The Special Master suggested that the same material issues of fact that must be resolved to dispose of Count I of the First Amended Complaint, are fundamental to the disposition of the remaining counts in the instant action. The undersigned agrees with the Special Master's reasoning in this regard.

In Defendant's Motion for Summary Judgment, Defendant argues that any remaining claims (aside from the unfair competition claim) brought by Plaintiff in the instant action depend upon the satisfaction

of legal standards that Plaintiff cannot sustain in connection with its claims of unfair competition and misappropriation of trade secrets. In sum, Defendant contends that inasmuch as Plaintiff cannot identify any trade secrets or such trade secrets were not properly protected, each of the counts of the Amended Complaint fall as in a domino theory. This Court has already determined that triable issues of fact exist on the issue of Common Law Unfair Competition. The resolution of these facts is essential to a determination of the balance of Plaintiff's claims against Defendant. Accordingly, it is hereby

ORDERED AND ADJUDGED that the Special Master's recommendation regarding the parties' Cross–Motions for Summary Judgment is ADOPTED AND AFFIRMED; said Cross–Motions are DENIED. The Special Master's recommendation on the issue of choice of law, however, is REJECTED—Massachusetts law applies to all claims in the instant case.